IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEBORAH GAMBILL,** *et al.,* ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 1:22-cv-286-SPB |
| ) | |
| **CHILD DEVELOPMENT CENTERS,** ) | |
| **INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

**Susan Paradise Baxter, United States District Judge**

In this putative civil class action, Plaintiffs Deborah Gambill, Suprena Hawkins, Nena Hudson-Estrella, Royal Johnson, Veronica McCallum, Deasia Moore, Milton Ortiz, Martha Tate, and Garry Williams ("Plaintiffs") have sued Defendant Child Development Centers, Inc. ("CDC" or "Defendant"), on behalf of themselves and all others similarly situated, for alleged violations of the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*. Pending before the Court is the Defendant's motion to dismiss the Amended Complaint and to strike the Plaintiffs' class allegations. For the reasons that follow, Defendant's motion to dismiss will be granted, and its request to strike the class allegations will be dismissed as moot.

### I.   STANDARD AND SCOPE OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). In deciding a motion to dismiss, the court accepts as true all well pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

1

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A court need not accept as true unsupported conclusions and unwarranted inferences. *Doug Grant, Inc. v. Greate Bay Casino Corp*., 232 F.3d 173, 183-84 (3d Cir. 2000). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

In deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, any exhibits attached to the complaint, and matters of public record. *Pension Benefit Guaranty Corp. v. White*, 998 F.2d 1192, 1196 (3d Cir.1993); *see* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1993). In addition, courts may consider a document that a defendant attaches as an exhibit to a motion to dismiss, if the authenticity of the document is undisputed and the plaintiff's claims are based on the document. *Id.*

In this case, Plaintiffs have alleged that they exhausted their administrative remedies under Title VII by filing EEOC charges on August 18 and 19, 2022 and initiating this lawsuit within ninety days of their September 13, 2022 right-to-sue notice. *See* ECF No. 13, ¶¶82-87. Defendant has appended to its motion the above-referenced EEOC charges as well as EEOC charges that the Plaintiffs previously filed in connection with related litigation in this Court. *See* ECF Nos. 33-1 and 33-2. The Court finds, and the parties do not dispute, that these documents may be considered as part of the Rule 12(b)(6) record without any need to convert Defendant's

2

motion into a motion for summary judgment. *See Branum v. United Parcel Serv., Inc.*, 232 F.R.D. 505, 507 n.1 (W.D. Pa. 2005) (noting that "exhibits, such as the EEOC documents attached to defendant's motion, may be considered in deciding the motion to dismiss because 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case ... may be considered by the district court without converting the motion into one for summary judgment'") (quoting 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 376 (3d ed.2004)); *see also Hercik v. Rodale, Inc.*, 2004 WL 1175734, at *1 (E.D. Pa. May 24, 2004) (considering plaintiff's EEOC charge and "Allegations of Employment Discrimination submitted to the PHRC as undisputedly authentic public records); *Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000) (court concluding that, consistent with Rule 12(b)(6), it could consider plaintiff's EEOC charge and related EEOC documents, "either as undisputed documents referenced in the complaint or central to the plaintiff's claim, or as information which is a matter of public record"), *aff'd*, 276 F.3d 579 (3d Cir. 2001). With these principles in mind, the Court acknowledges the following relevant background information.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are nine non-white individuals who were previously employed by CDC until they were involuntarily furloughed in the fall of 2020. Plaintiffs initially filed timely charges of discrimination with the EEOC in February 2021 (the "Initial EEOC Charges"). *See* ECF No. 33-1. Each of these Initial EEOC Charges alleged disparate treatment on the basis of race, among other factors. Most of the Initial EEOC Charges including the following language:

> On September 25, 2020 CDC indefinitely furloughed a number of employees and did so by distributing a letter to every individual with the organization:

3

> approximately 160 employees.  The letter did not identify the individuals by name, but rather identified the individuals by job title and age.  The list was predominantly comprised of African American individuals over the age of 40.  [Plaintiff] was one of such individuals."

*Id.*[1]

On January 3, 2022, after exhausting their administrative remedies, Plaintiffs filed a complaint in this Court asserting that, in terminating their employment, CDC had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e-2(a)(1) ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, et seq. ( "ADEA"), the Family Medical Leave Act of 1993 ("FMLA") 29 U.S.C. § 2601 et seq., the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA"), the Wage Payment and Collection Law 43 P.S. §260.1 et seq. ("WPCL"), and Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981.  *See Gambill, et al., v. Child Development Centers, Inc*., No. 1:22-cv-5 (W.D. Pa.) (hereafter, "*Gambill I*"), at ECF No. 1.  Plaintiffs alleged in *Gambill I* that they were among eighteen (18) individuals who had been furloughed by CDC on September 25, 2020, and that the furlough had "explicitly targeted African American employees and employees over the age of 40, as most of the employees selected belonged to one or both of these protected classes."  *Id*. at ¶¶23, 40, 59, 75, 90, 109, 129, 155, 172.  As of this writing, the parties are still actively litigating *Gambill I.*

On June 6, 2022, Plaintiffs' counsel submitted a FOIA request for "EEO-1 data" submitted by CDC to the EEOC -- specifically, "race data for the company beginning from 2019 through present."  ECF No. 13, ¶35.  On July 18, 2022, Plaintiffs' counsel received a copy of CDC's 2020 Employer Information Report EEO-1 ("EEO-1 Report") in response to the FOIA

---

[1] Only the Initial EEOC Charge of Plaintiff Milton Ortiz did not include the quoted language; however, this fact is irrelevant for present purposes.

request. *Id.* at ¶37. The EEO-1 Report allegedly showed a 63.4 percent reduction in CDC's minority workforce from 2019 to 2020, while also showing a 16.3 percent increase in CDC's white employees during that same period. *Id.* at ¶¶36-39. According to Plaintiffs, the report shows that CDC's stated justification for terminating their employment (*i.e.*, a downturn in business caused by the Covid-19 pandemic) was neither job-related nor a matter of business necessity, because CDC hired 53 additional white employees during the 2019-2020 timeframe. *Id.* at ¶40.

On October 5, 2022, Plaintiffs filed the instant lawsuit against CDC (hereafter, "*Gambill II*"). In the instant action, Plaintiffs identify themselves as putative class representatives who allege that CDC utilized facially neutral "screening policies" in a manner that had a disparate impact on themselves and other minority employees in violation of Title VII. Plaintiffs' operative pleading at this juncture is their Class Action Amended Complaint ("Amended Complaint"), filed on January 19, 2023. *See Gambill II,* No. 1:22-cv-286, at ECF No. 13.

In their Amended Complaint, Plaintiffs state that they "are initiating this action to address Defendant's deliberate misstatements and the concealment of evidence which demonstrate that the company's application of facially neutral policies during the COVID-19 pandemic had the effect of "whitewashing" the racial composition of its workforce." ECF No. 13, ¶1. Specifically, Plaintiffs claim that CDC received $662,500 in pandemic relief funds as of April 2020, while its business operations were interrupted due to mandated quarantine measures and alleged decreased enrollment. *Id.* It is alleged that Defendants utilized these circumstances to terminate the vast majority of its minority employees and replaced them with white employees. *Id*.

Plaintiffs state that they are initiating this action now because they "did not have a factual or legal basis to assert these claims prior to their receipt of the CDC's EEO-1 Report on July 18,

5

2022." ECF No. 13, ¶42. Specifically, Plaintiffs insist they "did not have any means to access or obtain this information until after a lawsuit was filed." *Id*. (citing 29 C.F.R. § 1610.5(b)(3)). Unlike *Gambill I*, which was "limited to the period through September 25, 2020," *id*. at ¶42, the instant lawsuit purports to seek redress for "putative class members who were also impacted by the CDC's application of Screening Policies throughout 2020 to the present." *Id*. at ¶26. To that end, Plaintiffs allege that CDC's "Screening Policies" remain in effect to this day and "continue[] to impact the company's Minority Employees in a statistically significant way." *Id*., ¶¶43-44.

On October 26, 2023, CDC filed the instant motion to dismiss Plaintiffs' Amended Complaint and to strike Plaintiffs' class action allegations. ECF No. 33. CDC argues that dismissal of the Amended Complaint is required because: Plaintiffs have engaged in improper claim splitting; Plaintiffs' class claims are time-barred; Plaintiffs' class claims are outside the scope of the administrative EEOC complaint; Plaintiffs lack standing to bring a class action lawsuit; and Plaintiffs have failed to state a *prima facie* disparate impact claim. CDC also asserts that Plaintiffs' class action allegations should be stricken because Plaintiffs cannot sustain their burden of demonstrating the requirements for a class action pursuant to Federal Rule of Civil Procedure 23. ECF Nos. 33, 34.

Plaintiffs have responded to CDC's motion, and CDC has filed its reply. *See* ECF Nos. 37, 38. The matter is now ripe for resolution.

### III.   DISCUSSION

*A. Plaintiffs Have Engaged in Improper Claim-Splitting.*

The long-standing prohibition on claim-splitting prevents plaintiffs from "maintain[ing] two separate actions involving the same subject matter at the same time in the same court and

6

against the same defendant." *Walton v. Eaton Corp.,* 563 F.2d 66, 70 (3d Cir. 1977) (citing *United States v. Haytian Republic*, 154 U.S. 118, 123-24 (1894)).  The prohibition "ensures that plaintiffs cannot present piecemeal litigation" and that they "instead present all claims arising out of a single alleged wrong in one action before the court." *Estes Express Lines v. U.S.A. Lamp & Ballast Recycling, Inc.,* No. 2:23-CV-1228, 2023 WL 6928234, at *3 (W.D. Pa. Oct. 19, 2023) (*citing Prewitt v. Walgreens Co*., Civil Action No. 12-6967, 2013 WL 6284166, at *5 (E.D. Pa. Dec. 2, 2013).  By virtue of this doctrine, litigants are precluded not only from filing duplicative lawsuits but also from circumventing a court's prior rulings.  *Id*.  The rule against claim-splitting "applies when two cases: (1) take place in the same court; (2) with the same defendants; (3) involving the same subject matter." *McKenna v. City of Phila*., 304 F. App'x 89, 92 (3d Cir. 2008).  "Parallel complaints need not be completely identical," in order for the rule to apply.  *Id*.

     Here, CDC argues that the prohibition against claim-splitting applies because Plaintiffs are actively participating in two cases against CDC, both of which are pending before this Court, and both of which concern the allegation that CDC's furlough decisions discriminated against minorities in violation of Title VII.  CDC contends that allowing both claims to proceed simultaneously would allow piecemeal litigation and undermine any semblance of judicial economy.  In their response, Plaintiffs do not dispute that their initiation of this lawsuit constitutes claim-splitting; however, they argue that the proper remedy is for this action to be consolidated with *Gambill I*.

     "A district court presented with a plaintiff's attempt to split claims has the option to stay the second proceeding, dismiss the second filing without prejudice, or consolidate it with the initial suit." *Estes Express Lines*, 2023 WL 6928234, at *3 (citing *Walton*, 563 F.2d at 70-71). Our Court of Appeals has observed that, "[w]hen a court learns that two possibly duplicative

actions are pending on its docket, consolidation may well be the most administratively efficient procedure." *Walton*, 563 F.2d at 71.  The court must make sure, however, that, by filing two separate complaints, the plaintiff is not attempting to "expand the procedural rights he would have otherwise enjoyed." *Id*.  "In particular, the court must insure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints, Fed. R. Civ. Proc. 15, and demand for trial by jury, Fed. R. Civ. Proc. 38." *Id*.

In this case, consolidating *Gambill II* with *Gambill I* would essentially result in an amendment of Plaintiffs' original complaint.  As set forth below, however, there is no basis for consolidating Plaintiffs' lawsuits because the instant class claims are subject to dismissal.

### B.  Plaintiffs Failed to Timely Exhaust Their Administrative Remedies for Any Putative Class Claims.

CDC asserts that the Amended Complaint in this matter is time-barred and that the class claims are outside the scope of what was alleged in Plaintiffs' Initial EEOC Charges.  The Court finds these arguments to be well-taken.

Title VII sets time limitations on plaintiffs for administratively exhausting and filing their claims, which serve as "non-jurisdictional prerequisites, akin to statutes of limitations[.]" *Communications Workers of Am. v. New Jersey Dep't of Personnel*, 282 F.3d 213, 216 (3d Cir. 2002).  The purpose of the exhaustion requirement is "to place the relevant agency 'on notice of the plaintiff's claims and afford it the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court.'" *Taylor v. Se. Pennsylvania Transportation Auth*., No. CV 23-2140-KSM, 2024 WL 3203318, at *9 (E.D. Pa. June 27, 2024) (quoting *Webb v. City of Phila*., 562 F.3d 256, 262 (3d Cir. 2009)).

In "deferral" states like Pennsylvania, a complainant must file an EEOC charge within 300 days "after the alleged unlawful employment practice occurred" if that individual has initiated proceedings with a state or local agency. 42 U.S.C. §2000e-5(e)(1); *see Mandel v. M&Q Packaging Corp.,* 706 F.3d 157, 165 (3d Cir. 2013). Once the complainant receives a right-to-sue letter from the EEOC, he or she has ninety (90) days within which to file suit. 42 U.S.C. §2000e–5(f)(1); 29 C.F.R. §1601.19(a); *Seitzinger v. Reading Hosp. and Medical Center*, 165 F.3d 236, 239 (3d Cir. 1999).

A Title VII claim is time-barred if the EEOC charge is not filed within the prescribed time-period. *See Bartos v. MHM Corr. Servs., Inc.,* 454 F. App'x 74, 78 (3d Cir. 2011) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002)). Under Title VII, a claim accrues when the alleged unlawful employment practice "occurred." *See* 42 U.S.C. § 2000e-5(e)(1) ("A charge under this section shall be filed within ... three hundred days after the alleged unlawful employment practice *occurred*....") (emphasis added). "[A]n adverse employment action occurs, and the statute of limitations therefore begins to run, at the time the employee receives notice of that action and termination is a delayed but inevitable result." *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 852-53 (3d Cir. 2000) (citing *Delaware State College v. Ricks*, 449 U.S. 250 (1980); *see Ruehl v. Viacom, Inc.,* 500 F.3d 375, 383 (3d Cir. 2007) (calculating 300-day filing period from the day the plaintiff was notified his job would be eliminated).

According to the Amended Complaint, most of the named Plaintiffs were notified of their impending furlough on September 25, 2020, except for Royal Johnson (who was notified on October 1, 2020) and Suprena Hawkins (who was notified on October 12, 2020). *See* ECF No. 13, ¶¶49, 57, 65, 69, 73, 77, 81; *C.f.* ECF No. 13, ¶¶ 53, 61. Utilizing October 12, 2020 as the

9

last applicable accrual date, the 300-day period for filing an EEOC charge alleging class-based discrimination ended on **August 8, 2021.** Here, however, Plaintiffs aver that they exhausted their administrative remedies by dual-filing their administrative charges of discrimination with the EEOC and PHRC on ***August 18-19, 2022*** and then filing this lawsuit within 90 days after they received their September 13, 2022 "notice of right to sue" letters. *See Gambill II*, ECF 13 at ¶ 82. Because August 18-19, 2022 is more than a year beyond the August 8, 2021 deadline for filing class-based EEOC discrimination charges, Plaintiffs' present class-based claims are facially time-barred.

Plaintiffs respond that their class claims should be considered timely for two reasons. First, they contend that their Initial EEOC Charges relative to *Gambill I* -- which were indisputably filed within the 300-day window -- gave CDC and the EEOC notice of their putative class claims and thereby satisfied Title VII's exhaustion requirement. Alternatively, Plaintiffs contend that the 300-day period for filing their class-based discrimination charges was equitably tolled. We address each argument in turn.

(i)

We first consider whether Plaintiffs' class claims were within the scope of their Initial EEOC Charges. "Once a charge has been filed with the EEOC, . . . the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976)). Here, Plaintiffs contend that their class-based disparate impact claims were within the range of matters that could reasonably be expected to grow out of their Initial EEOC Charges.

10

This Court does not agree. In each of the nine Initial EEOC Charges, the Plaintiffs alleged individual, disparate treatment claims in violation of Title VII. *See* ECF No. 33-1. Each charge referenced the Plaintiff's own, personal employment circumstances. None of the charges included class-based allegations or references to class-wide claims. Nor did the charges assert disparate impact, as opposed to disparate treatment, claims. There was no mention of the alleged on-going "screening policies" involving "hiring, firing, promotion, transfer, and furloughing" of CDC's employees that are the gravamen of the Amended Class Action Complaint. ECF No. 13, ¶21. Instead, the Initial EEOC Charges focused exclusively on CDC's actions as they related to the September 25, 2020 furlough. In arguing otherwise, Plaintiffs point to the assertion in their Initial EEOC Charges that, "[o]n September 25, 2020, [CDC] indefinitely furloughed a number of employees" who "were predominantly comprised of African American individuals over the age of 40." But "a number of employees" is an indefinite term and does not necessarily imply that Plaintiffs were asserting claims on behalf of anyone other than themselves -- *i.e.,* a group of nine individuals who filed contemporaneous EEOC charges arising from the same adverse employment event. Nor is the Court persuaded that the scope of the agency's investigation into the Initial EEOC Charges could reasonably have been expected to encompass the Plaintiffs' class-based claims as they are now framed. Again, unlike Plaintiffs' specific furlough-based individual claims, their class claims are predicated on non-specific "screening practices" that allegedly impacted a group of individuals beyond 2019- 2020, up to and including the present.

The instant case presents facts similar to those in *Kresefky v. Panasonic Communications & Systems, Co.*, 169 F.R.D. 54 (D.N.J. 1996). In *Kresefky*, the court denied the plaintiffs' motion to proceed as a collective or class action under various federal anti-discrimination statutes, because the plaintiffs had not properly raised class claims in their EEOC charges. The

11

court acknowledged that the charges did not need to specifically state that they were being brought on behalf of "others similarly situated," and "need[ed] only to allege class issues that may subsequently form the basis for a class action." 169 F.R.D. at 59 (quoting *Whalen v. W.R. Grace & Co.*, 56 F.3d 504, 507 (3d Cir. 1995)). Yet after considering four EEOC charges filed by the putative class representatives, the court found that each one failed to provide notice of class claims. Most relevant for present purposes is the charge of Kenneth Kaplan, which read:

> I was hired by the above-named employer on October 28, 1981. My performance and attendance during my employment was satisfactory. I was permanently laid off from my position as Product Support Manager on January 31, 1994 due to a downsizing. Fourteen (14) employees were affected in my division (Marketing). Ten were within the protected age group. Younger, less experienced and less senior employees were retained. I allege that I was discriminated against because of my age (52) in violation of the Age Discrimination in Employment Act.

169 F.R.D. at 60. Although Kaplan alleged that ten of the fourteen employees terminated from his department were within the protected age group, the court found that this "[did] not suffice to place defendants on notice of class claims in the face of his repeated references to his own performance, his own termination and the discrimination he personally suffered." *Id.* The court contrasted Kaplan's EEOC charge to the one at issue in *Lusardi v. Lechner*, 855 F.2d 1062, 1077 (3d Cir. 1988), where the court found the charge language sufficient to provide notice of class claims. In *Lusardi*, unlike in *Kresefky*, the complainant's charge "alleged that the defendant had engaged *and was continuing to engage in* specified discriminatory practices against *past, present and future employees 'such as'* the named plaintiff, and referred to this group as *class*." 169 F.R.D. at 60 (emphasis in the original) (citing *Lusardi*, 855 F.2d at 1078).

In this case, the Plaintiffs' Initial EEOC Charges referred to an unspecified "number of employees" who were furloughed, then stated that the charging complainant was "one of such individuals." ECF No. 33-1. However, each charge focused on the individual complainant's personal disparate treatment claim, and there was no temporal reference to ongoing

12

discrimination against present and future employees. Nor was there any reference to claims predicated on conduct outside of the September 25, 2020 furlough. Accordingly, the Court finds that neither the Initial EEOC Charges, nor the reasonable scope of investigation arising therefrom, could be expected to encompass Plaintiffs' current class claims.

In their responsive brief, Plaintiffs quote *Branum v. United Postal Services, Inc.*, 232 F.R.D. 505 (W.D. Pa. 2005), for the proposition that there is "no per se rule that would preclude, at a motion to dismiss stage, an ADA class action merely for failure to have class allegations set forth in the initial charge filed with the EEOC." 232 F.R.D. at 522. From this, Plaintiffs extrapolate that, even if they failed to provide sufficient notice of class allegations, they are not precluded from bringing the instant class action claims.

This line of argument is unpersuasive. First, to this Court's knowledge, *Branum* has not been cited or followed in this circuit for the proposition Plaintiff is advocating. Second, the court in *Branum* interpreted the plaintiff's EEOC charge liberally, in large part because the plaintiff was representing himself. That is not the situation here, as Plaintiffs were apparently represented by counsel when they filed their Initial EEOC Charges. Finally, there was no dispute in *Branum* that the plaintiff had filed his EEOC charge and ensuing class action complaint within the respective 300-day and 90-day windows; instead, the court was concerned solely with the *scope* of issues that could be deemed exhausted. In this case, even if the Court were to find that Plaintiffs' Initial EEOC Charges encompassed allegations of class-wide discrimination, it is evident that Plaintiffs did not file their ensuing class action lawsuit within the prescribed 90-day period following receipt of the EEOC's initial right-to-sue notices.[2]

---

[2] The record reflects that the first right-to-sue notice was issued on October 5, 2021; the date of the last right-to-sue notice is not clear from the record but, in any event, it would have necessarily been issued prior to January 3, 2022, when Plaintiffs filed their complaint in *Gambill I*. *See Gambill I,* ECF No. 1,

13

In sum, Plaintiffs' Initial EEOC Charges fail to establish that they timely exhausted their class action claims.

(ii)

Plaintiffs alternatively argue that the period for administratively exhausting their class-based claims was equitably tolled. This argument also lacks merit.[3]

Equitable Tolling is appropriate in Title VII cases where "the defendant has actively misled the plaintiff; when the plaintiff 'in some extraordinary way' was prevented from asserting her rights; or when the plaintiff timely asserted her rights in the wrong forum." *Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 240 (3d Cir.1999) (internal citations omitted). District courts are to apply equitable tolling sparingly. *Id*. at 237.

In the context of alleged employment discrimination, the doctrine of equitable tolling requires that: (1) the defendant actively misled the plaintiff about the reason for plaintiff's adverse employment action, and (2) this deception caused plaintiff to not to comply with the

---

¶15; *id.* at ECF No. 1-1. However, the Plaintiffs' initial *class action complaint* in *Gambill II* was not filed until October 5, 2022.

[3] The Court recognizes that, although Plaintiffs would ultimately bear the burden of proof on equitable tolling, *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 591 (3d Cir.2005), the Court "may not allocate the burden of invoking equitable tolling in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Wiggins v. Albert Einstein Med. Ctr.,* No. 20-3129, 2022 WL 1197015, at *2 (3d Cir. Apr. 22, 2022) (cleaned up). Here, the Court is able to render a dispositive ruling on the issue of equitable tolling without improperly shifting the parties' pleading burden. First, Plaintiffs have raised the matter in their Amended Complaint, likely in anticipation of Defendant raising the statute of limitations defense. Second, the Court, accepting Plaintiffs' well-pled averments as true, is nevertheless able to determine, as a matter of law, that the doctrine of equitable tolling does not apply in this case. Third, the Court's disposition of this issue at the Rule 12(b)(6) stage is consistent with the approaches taken by other district courts where it was evident from the Rule 12(b)(6) record that no plausible basis existed for applying equitable tolling principles. *See, e.g., Annoni v. Allentown Sch. Dist*., No. 5:24-CV-00950-JMG, 2024 WL 3361632, at *3 (E.D. Pa. July 9, 2024) (granting Rule 12(b)(6) dismissal and finding that, even accepting plaintiff's alleged facts as true, equitable tolling did not apply); *Azadpour v. AMCS Group Inc.*, Civil Action No. 19-1968, 2022 WL 4110524, *5 n.5 (E.D. Pa. Sept. 8, 2022) (noting that "district courts routinely dismiss employment discrimination claims for failure to exhaust administrative remedies in a timely manner on 12(b)(6) motions -- even when the plaintiff invokes equitable tolling but it is clear the doctrine does not apply") (citing authority), *aff'd*, Case No. 22-2923, 2023 WL 4044607, at *3 (3d Cir. June 16, 2023).

statute of limitations. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994), *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018) (*en banc*). A mere withholding of information does not suffice. *See Azadpour v. AMCS Group Inc.*, No. 22-2923, 2023 WL 4044607, at *3 (3d Cir. June 16, 2023) (concluding that defendant did not engage in the kind of "active misleading" that was necessary to equitably toll the limitations period; court noting that defendant's "not giving any reason" for rescinding its offer of employment was "altogether different from providing a specious one"). Additionally, "equitable tolling requires the plaintiff to demonstrate that he or she could not, by the exercise of reasonable diligence, have discovered essential information bearing on his or her claim." *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 384 (3d Cir. 2007) (citing *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004)) (internal quotation marks omitted); *see also Annoni v. Allentown Sch. Dist.,* No. 5:24-CV-00950-JMG, 2024 WL 3361632, at *3 (E.D. Pa. July 9, 2024).

In this case, Plaintiffs argue that CDC actively misled them when, in response to the Initial EEOC Charges, it filed a position statement that "vastly understated the number of employees furloughed, understated the number of minorities furloughed, and failed to mention that additional white employees were hired to replace minorities on or about the same time." ECF No. 37 at 10. Specifically, CDC represented that only 18 employees had been furloughed, with 10 out of the 18 being nonwhite employees, whereas the EEO-1 data showed that the company terminated 33 nonwhite employees and added 53 white employees between 2019 and 2020. *Id.*; *see* ECF No. 13, ¶¶27-28, 38-42. Plaintiffs state that this information was available to CDC but not made known to Plaintiffs at any point during the investigation stage of the Initial EEOC Charges.

Having fully reviewed the Rule 12(b)(6) record, the Court finds no grounds for applying equitable tolling principles in this case. Plaintiffs fault CDC for "intentionally "limit[ing] the information it made available to the named Plaintiffs and the EEOC" during the initial investigation phase. ECF No. 13, ¶29. In particular, Plaintiffs allege that CDC misled them by focusing "just on the18 employees who it claimed were furloughed in September 2020." *Id*. But as CDC points out, Plaintiff's Initial EEOC Charges specifically alleged discrimination in connection with the September 25, 2020 furlough. ECF No. 33-1.

Plaintiffs also predicate their equitable tolling argument upon their acquisition of CDC's 2020 EEO-1 report, which they obtained on July 18, 2022. *See* ECF No. 13, ¶42 ("Plaintiffs are initiating this action now because [they] did not have a factual or legal basis to assert these claims prior to their receipt of the CDC's EEO-1 Report on July 18, 2022."). Generally, a defendant's mere withholding of information is not sufficient to establish grounds for equitable tolling. *See Azadpour,* 2023 WL 4044607, at *3. But more to the point, the record shows that Plaintiffs did not exercise reasonable diligence in obtaining the "essential information bearing on [their] claim." *Ruehl*, 500 F.3d at 384. Here, Plaintiffs were aware of their terminations no later than October 12, 2020. As reflected in their Initial EEOC Charges, Plaintiffs also knew as of February 2021 that other employees had been furloughed in or around the same timeframe and that the furloughed employees were "predominantly comprised of African American individuals." ECF No. 13, ¶¶24-25; ECF No. 33-1. Still, Plaintiffs did not file their FOIA request for the EEO-1 Report until June 6, 2022, which, they note, was "four days before the Court issued its Initial Scheduling Order" in *Gambill I*. ECF No. 13, ¶¶35-36. Plaintiffs claim that they "did not have any means to access or obtain this information until after a lawsuit was filed." ECF No. 13, ¶42 (citing 29 C.F.R. §1610.5(b)(3)). But this assertion is mistaken. FOIA

16

requires the government and its agencies to disclose information to the public upon request, subject to certain exemptions which are not presently relevant. *See* 5 U.S.C. §§552(a)(3)(A) and (b)(1)-(9); *see also Western Star Hosp. Auth. Inc. v. United States Dep't of Veterans Affs.*, No. 2:18CV1011, 2021 WL 9595459, at *2 (W.D. Pa. Feb. 12, 2021). By law, agencies are required to respond to a FOIA request within twenty working days. *See* 5 U.S.C. §552(a)(6)(A)(i). The regulation cited by Plaintiffs, 29 C.F.R. §1610.5(b)(3), imposes a special rule that applies *only when a party is making a FOIA request for EEOC records related to a charge of discrimination*; by its terms, it does not apply to a request for EEO-1 data.[4] By waiting until June 2022 to file their FOIA request for data about CDC's staffing changes, Plaintiffs failed to exercise "reasonable diligence in discover[ing] [the] essential information bearing on [their] claim." *Ruehl*, 500 F.3d at 384.

Based on the foregoing discussion, the Court concludes that Plaintiffs' class claims were not timely exhausted. As a result, they are now time-barred and subject to dismissal, with prejudice, because the untimeliness of Plaintiffs' claims cannot be cured through further amendment.

## IV. CONCLUSION

Because Plaintiffs' class claims must be dismissed as untimely, there is no basis for consolidating the instant lawsuit with *Gambill I*. Further, there is no need to address Defendant's other bases for dismissal or its request to strike the class action allegations. Defendant's motion

---

[4] *See* 29 C.F.R. § 1610.5(b)(3) ("A respondent must always provide a copy of the "Filed" stamped court complaint *when requesting a copy of a charge file*. The charging party must provide a copy of the "Filed" stamped court complaint *when requesting a copy of the charge file if the Notice of Right to Sue has expired* as of the date of the charging party's request.") (emphasis added).

17

to dismiss the Class Action Amended Complaint will be granted for the reasons stated, and its motion to strike will be dismissed as moot.

An appropriate order follows.

*[signature: Susan Paradise Baxter]*

SUSAN PARADISE BAXTER
United States District Judge